Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| SHARON BARNUM; JERRY P. CABEBE, ROBERT SUSTRIK, and all similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> EQUIFAX INFORMATION SERVICES, LLC, <br><br> Defendant. | No.: 2:16-cv-2866-RFB-NJK <br><br><br> **PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiffs Sharon Barnum, Jerry P. Cabebe, and Robert Sustrik (collectively, "Plaintiffs") move for leave to file a second amended complaint. Most significantly, since the filing of Plaintiffs' First Amended Complaint, the Ninth Circuit has recently handed down specific guidance regarding the scope of a concrete

informational injury, and Plaintiffs seek amendment largely to conform several of their damages-based allegations to reflect this new Ninth Circuit guidance. Plaintiffs also wish to clarify their proposed class definition. Plaintiffs consequently seek to adjust their discussion of the viability of their proposed class claims in light of the two proposed modifications. Plaintiffs' request to amend their Complaint comes more than a month in advance of the leave-to-amend deadline, and approximately four months prior to the close of discovery. Plaintiffs have been diligent in seeking to bring their proposed amended complaint now, and defendant Equifax Information Services, LLC ("Equifax") will suffer no prejudice as a result of having to address the refashioned allegations in Plaintiffs' proposed new pleading. This is Plaintiffs' first motion for leave to amend their complaint.

This Motion is supported by the following Memorandum of Points and Authorities, the pleadings and other filings in this case, and the proposed second amended complaint attached hereto as **Exhibit A**.

### INTRODUCTION

Plaintiffs allege that notifying Equifax in writing of claimed inaccuracies on their Equifax credit reports, Equifax failed to timely notify them and a class of similarly situated disputing consumers of the results of its reinvestigations and/or other dispute determinations following completion and/or termination of a reinvestigation of a consumer dispute, as required by 15 U.S.C. § 1681i. Plaintiffs and proposed class members (1) submitted written disputes to Equifax, (2) triggering the same statutory reinvestigation duties, but (3) Equifax failed to properly notify each of them results of its reinvestigations, which (4) damaged Plaintiffs and Class members in generally the same manner.

Plaintiff Jerry Cabebe originally sued Equifax in mid-December 2016, and brought an amended complaint as a matter of right the next day. After Plaintiffs filed their First Amended Complaint, the Ninth Circuit handed down its decision in *Syed v. M-I, Inc.*, for which a

rehearing occurred on March 20, 2017.[1]  Among other things, the *Syed* panel found that "[b]y providing a private cause of action for violations . . . Congress has recognized the harm such violations cause, thereby articulating a 'chain[] of causation that will give rise to a case or controversy.'"[2]  The *Syed* panel also concluded that the Plaintiff's allegations were "sufficient to infer that [the Plaintiff] was deprived of the *right to information*" which Congress, through the FCRA, had guaranteed him.[3]  While Plaintiffs do not believe that *Syed* constitutes "new law" in this Circuit, its decision and subsequent discussion of what constitutes a "concrete informational injury" certainly informs Plaintiffs' allegations regarding how Equifax deprived Plaintiffs and a proposed class of similarly situated individuals of their Congressionally authorized right to information under Section 1681i – i.e., timely notification from Equifax regarding the results of their consumer disputes.  Based on the very recent authority in *Syed*, Plaintiffs believe that a minor modification of their damage allegations is warranted,  as the reasoning of *Syed* can properly apply to their claim under Section 1681i.  They have updated their damages allegations to more specifically state the same.

Plaintiffs also wish to update their proposed class definition, in order to better clarify the categories of potential class Plaintiffs.  To be sure, the scope of their proposed class will not change as a result of amendment; instead, their proposed modifications are designed to assist both Plaintiff and Equifax in more precisely ascertaining the proposed class, and also in facilitating class-based discovery in the event their proposed class is ultimately certified.

Based on this change, Plaintiffs also seek to update their discussion of why class-based relief is warranted.  Finally, Plaintiffs wish to make several minor changes to their Compliant to clarify several of their damages allegations.

---

[1] 846 F.3d 1034 (9th Cir. Jan. 20, 2017) ("*Syed I*"), as amended, --- F.3d ----, 2017 WL 1050586 (9th Cir. Mar. 20, 2017) ("*Syed II*").
[2] *Syed II*, 2017 WL 1050586, at *4 (internal citations omitted) (formatting in original) (citing to 15 U.S.C. § 1681b(b)(2)(A)).
[3] *See id.* at *5 (emphasis added).

All of the leave-to-amend factors the Court must consider under the seminal authority of *Foman v. Davis* are satisfied.[4]  Plaintiffs have not unduly delayed bringing this proposed amendment, as it comes a reasonable time after the *Syed* decision and more than a month prior to the leave-to-amend deadline; indeed, since approximately four months remain to conduct discovery, a presumption against finding undue delay applies.  Equifax will not be prejudiced by this amendment, as written discovery has only recently commenced and in fact no written discovery requests have yet been exchanged by the parties; in fact, Plaintiffs' proposed amendments are designed to bring greater clarity to the certification and class-wide discovery process, which arguably results in a benefit to Equifax.  There is no evidence of bad faith on Plaintiffs' part.  Because Plaintiffs' proposed modifications to their Complaint are all reasonably related to their original allegations, they are not futile.  And, while Plaintiffs did previously amend their complaint just after filing the complaint, that amendment came as a matter of right, and so Plaintiffs have not failed to conform their proposed amendments to a judicial directive or exhume them from the grave of prior dismissal.  For all of these reasons, the Court should grant Plaintiffs' motion for leave to amend.

## BACKGROUND

**1.   Plaintiffs review their Equifax credit reports and submit written disputes to Equifax, which seek to correct allegedly inaccurate reported information.**

Ms. Barnum obtained an Equifax credit report dated July 10, 2016.  After review, she believed that several tradelines contained inaccurate information.  On or about August 2, 2016, Ms. Barnum disputed the allegedly derogatory information on her credit report by notifying Equifax in writing of the claimed inaccuracies, and requesting that this information be corrected.  Ms. Barnum mailed her dispute letter to Equifax certified, return receipt.[5]

---

[4] 371 U.S. 178 (1962).
[5] *See* Plaintiff's First Amended Complaint, at ¶ 11-12.  Specifically, Ms. Barnum claimed inaccuracies with respect to tradelines reported by Comenity Bank/Brylnhme, Comenity Bank/Lnbrynat, JPMorgan Chase Bank, Ocwen Loan Servicing, LLC, and Wilshire Credit Corporation.  *Id.* at ¶ 11.  Unless otherwise specified, all references to the Complaint in this Background section will be to the operative First Amended Complaint, *not* the Proposed Second Amended Complaint.

Mr. Cabebe obtained an Equifax credit report dated May 5, 2016.  After review, he believed that a number of allegedly reported inaccurate, derogatory information.   On or about July 14, 2016, Mr. Cabebe disputed the allegedly derogatory information on his credit report by notifying Equifax in writing of the claimed inaccuracies, and requesting that this information be corrected.  Mr. Cabebe mailed his dispute letter to Equifax certified, return receipt.[6]

Mr. Sustrik obtained an Equifax credit report dated July 2, 2016.  After review, he believed that a number of allegedly reported inaccurate, derogatory information.   On or about August 18, 2016, Mr. Sustrik disputed the allegedly derogatory information on his credit report by notifying Equifax in writing of the claimed inaccuracies, and requesting that this information be corrected.  Mr. Sustrik mailed his dispute letter to Equifax certified, return receipt.[7]

### 2. Equifax fails to properly respond to each of the Plaintiffs' written consumer disputes, violating the FCRA.

After receipt of Plaintiffs' respective dispute letters (collectively, "Plaintiffs' Dispute Letters"), Equifax was required to conduct a reasonable reinvestigation of each respective dispute to determine whether the disputed information was inaccurate under 15 U.S.C. § 1681i, which in turn required Equifax to provide the disputed information to the relevant furnishers of that information, as applicable, no later than five days after receipt of Plaintiffs' Dispute Letters. 15 U.S.C. § 1681i(a)(2)(A).[8]

Equifax was required to conduct this reinvestigation before the end of the 30-day period after receiving each of the Plaintiffs Dispute Letters under 15 U.S.C. § 1681i(a)(1)(A).  This period could be extended for not more than 15 days under Section 1681i(a)(1)(B) if Equifax received additional relevant information from any of the Plaintiffs during the 30-day reinvestigation period, but none of the Plaintiffs provided additional relevant information to

---

[6] *Id.* at ¶¶ 30-33.  Specifically, Mr. Cabebe claimed inaccuracies with respect to tradelines reported by Chase Card, Credit One Bank, Ditech Financial LLC, New Century Mortgage, and Specialized Loan Services. *Id.* at ¶ 31.

[7] *Id.* at ¶¶ 50-51.  Specifically, Mr. Sustrik claimed inaccuracies with respect to tradelines reported by One Nevada Credit Union, Wells Fargo Home Mortgage, Nissan Motor Acceptance, and Toyota Financial Services. *Id.* at ¶ 50.

[8] *Id.* ¶¶ at 14-15 (Ms. Barnum's factual allegations); 33-35 (Mr. Cabebe's factual allegations); 52-53 (Mr. Sustrik's factual allegations).

Equifax during the operative period, and so Equifax's deadlines to reinvestigate and notify any of the Plaintiffs were not extended. After completing its reinvestigation, Equifax was required to notify each of the Plaintiffs of the results of its reinvestigation in writing no later the five day after completion. 15 U.S.C. § 1681i(a)(6)(A).[9]

However, Equifax never timely responded to any of the Plaintiffs Dispute Letters by notifying each of the Plaintiffs, in writing or otherwise, that it had either completed its reinvestigation of her dispute, or determined that the dispute was frivolous and/or irrelevant and terminated its reinvestigation. Because Equifax failed to timely responded to any of the Plaintiffs' Dispute Letters, none of the Plaintiffs knew whether Equifax timely notified any of the relevant furnishers of disputed information as Section 1681i required, nor whether any of these furnishers conducted a timely and proper investigation of the disputed information. Because Equifax failed to notify Plaintiffs, Plaintiffs could not determine whether Equifax timely corrected their disputed credit information, or instead failed to do so, thus causing continued reporting of inaccurate information in violation of Sections 1681i(a)(5)(A)(i)-(ii). Even if Equifax did in fact conduct a timely reasonable reinvestigation of Plaintiffs' respective disputed information, or concluded that her dispute was frivolous, it failed to timely notify any of the Plaintiffs of the same in writing or otherwise, thus violating either Section 1681i(a)(6)(A) or 1681i(a)(3)(B).[10]

In sum, Equifax's failure to timely notify any of the Plaintiffs of the results of a reinvestigation, or notify Plaintiffs that their disputes were frivolous, violated Section 1681i. Equifax's failure to timely and properly notify Plaintiffs was at least negligent, and on information and belief, was also willful.[11]

---

[9] *Id.* at ¶¶ 16-17 (Ms. Barnum); 36-37 (Mr. Cabebe); 54-55 (Mr. Sustrik). In the event Equifax determined during the course of its reinvestigation that any of the Plaintiffs' dispute was frivolous or irrelevant, Equifax was also required to notify each of the Plaintiffs in writing of that determination no later than 5 days after making that determination under 15 U.S.C. § 1681i(a)(3)(B). *Id.* at ¶¶ 18 (Ms. Barnum); 38 (Mr. Cabebe); 56 (Mr. Sustrik).

[10] *Id.* at ¶¶ 19-22 (Ms. Barnum); 39-42 (Mr. Cabebe); 56-60 (Mr. Sustrik).

[11] *Id.* at ¶¶ 23-25 (Ms. Barnum); 43-48 (Mr. Cabebe); 61-66 (Mr. Sustrik).

### 3. Plaintiffs suffer damages as a result of Equifax's FCRA violations.

Equifax's negligent violation of Section 1681i has caused each of the Plaintiffs to suffer actual damages, cognizable under Sections 1681o and 1681n. Specifically, the Plaintiffs have each considered incurring additional expense in submitting additional correspondence with Equifax to obtain an investigation of the disputed furnisher trade lines. Such costs are concrete and real, as Plaintiffs' time has a real and true intrinsic value in addition to the real value and costs incurred in sending additional correspondence, such as ink, paper, stamps, envelopes and use of a certified mailing service to ensure receipt in addition to the expense already incurred for their original disputes which were disregarded by Equifax. Equifax's failure to timely notify Plaintiffs has also caused them increased uncertainty, anxiety, and other emotional distress, because none of the Plaintiffs have assurances from Equifax that any properly disputed information was timely corrected. Plaintiffs each began suffering these damages on an ongoing basis from the date Equifax's time to respond to their respective Dispute Letter expired under the FCRA. Plaintiffs have been obligated to retain an attorney to prosecute their disputes, and has incurred attorney's fees and costs as a result, recoverable under 15 U.S.C. §§ 1681o, 1681n.[12]

As a result of Equifax's violations of the FCRA, Plaintiffs are entitled to recover actual damages, statutory damages, punitive damages, and attorney's fees and costs. 15 U.S.C. §§ 1681o, 1681n.[13]

### 4. Plaintiffs file the complaint and first amended complaint, and then conduct a discovery conference.

Plaintiff Jerry P. Cabebe filed the Complaint on December 11, 2016.[14] Before Defendant responded, Mr. Cabebe filed the First Amended Complaint ("FAC") on December 12, 2016, adding Ms. Barnum and Mr. Sustrik as Plaintiffs, and asserting allegations on behalf of a class of similarly situated individuals.[15] Equifax filed its Answer to the FAC on February 6, 2017.[16] The

---

[12] *Id.* at ¶¶ 26-29 (Ms. Barnum); 45-49 (Mr. Cabebe); 63-67 (Mr. Sustrik).
[13] *Id.* at ¶¶ 29 (Ms. Barnum); 49 (Mr. Cabebe); 67 (Mr. Sustrik).
[14] *See* ECF Dkt. 1.
[15] *See generally* FAC.
[16] ECF Dkt. 11.

parties thereafter held a discovery scheduling conference after which the Court entered a Scheduling Order in this matter on February 28, 2017, setting a discovery deadline for August 7, 2017,[17] and a deadline for filing a motion for leave to amend on May 9, 2017. In the Scheduling Order, the parties added a section entitled "Potential Effect of Class Certification," in which they provided that "In the event and after such time as the class is certified, the parties may request additional time to complete discovery. . . ."[18] No written discovery beyond initial disclosures has currently been exchanged by Plaintiffs and Equifax.

Shortly before the parties' scheduling conference, the Ninth Circuit handed down its opinion in *Syed v. M-I, Inc.*, for which an opinion following rehearing issued on March 20, 2017.[19] While *Syed* addressed a different provision of the FCRA – Section 1681b, which deals with the "permissible purposes" to which a third party can obtain a consumer report – Plaintiffs believe the reasoning of *Syed* is applicable to their particular dispute under Section 1681i. This is because in depriving Plaintiffs and Class members of *any* notification of that their consumer disputes had been received, considered, and properly responded to, Plaintiffs and putative class members suffered a concrete informational injury and lost a benefit conferred on them by Congress. The *Syed* case and its reasoning were unavailable to Plaintiffs at the time they amended their Complaint in December 2016. However, the *Syed* case provides Plaintiffs a means to better illustrate their damage allegations.

Plaintiffs' proposed amendments consist of (1) further clarifying their proposed class definition,[20] and (2) making minor modifications to their damage allegations,[21] (3) making adjustments to their discussion of the viability of seeking class-wide relief,[22] and (4) making other

---

[17] ECF Dkt. 19.

[18] *Id.* at 5.

[19] *See generally Syed I, Syed II.*

[20] *Compare* FAC at ¶ 70, *with* Proposed Second Amended Complaint, Exhibit A ("SAC"), at ¶ 77.

[21] *See* SAC at ¶¶ 30, 52, 72 (adding new allegation to each individual complaint that "Equifax's failure to timely notify [Plaintiff] has also caused [Plaintiff] to suffer a concrete informational injury, as [Plaintiff] had a statutorily guaranteed right to receive a timely response to her consumer dispute, which Equifax failed to provide.").

[22] *Compare* FAC at ¶ 79 ("As a result, all the class members have lost a benefit conferred on them by Congress, which can never be recovered"), *with* SAC at ¶ 86 ("As a result, all the class members have suffered a concrete informational injury in that they have lost a benefit conferred on them by Congress, specifically the right to know

- 8 -

minor adjustments to several additional paragraphs in the Complaint.[23]   Their proposed Second

Amended Complaint is attached to this Motion as **Exhibit A**.

## LEGAL STANDARD

Rule 15(a) governs amendment of a complaint.   Under Rule 15(a)(2), "[t]he court should

freely give leave [to amend] when justice so requires."[24]   Courts apply this policy with "extreme

liberality."[25]   While leave to amend a complaint is not automatic,[26] the Court should deny a motion

for leave to amend only where there is a "showing of bad faith, undue delay, futility, or undue

prejudice to the opposing party"—considerations commonly referred to as the *Foman* factors.[27]

Additionally, courts often consider whether the plaintiff has previously amended the complaint.[28]

Not all of these factors are equally important, however.   The Ninth Circuit has highlighted

prejudice as the "touchstone" of the Rule 15(a) analysis, and this factor therefore receives the

greatest weight.[29]   Trial courts in this district have remarked that, "[a]bsent prejudice, or a strong

showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in

favor of granting leave to amend."[30]   And as one court in this district put it, "[a]ny of the first four

factors can serve as a basis for denying leave to amend, but the analysis focuses on the bad faith of

the party seeking to amend the complaint, as well as the prejudice to the other party."[31]   Other

District of Nevada courts indicate that the party opposing amendment bears the burden to show

why amendment should be denied.[32]

---

that Equifax had timely reinvestigated their consumer disputes and responded to the same.  This benefit, now lost, can never be recovered.").

[23] *Compare* FAC at ¶¶ 15, 35, 53, *with* SAC at ¶¶ 15, 38, 58 (adding the words "as applicable" to Ms. Barnum, Mr. Cabebe, and Mr. Sustrik's damage allegations).   *Compare also* FAC at ¶¶ 21, 41, 59, *with* SAC at ¶¶ 21, 44, 64 (modifying wording of allegations).   *Compare also* FAC at ¶ 79, *with* SAC at ¶¶ 86-87 (breaking original paragraph into two paragraphs).

[24] Fed. R. Civ. Proc. 15(a)(2); *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

[25] *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quotation marks omitted).

[26] *LT Intern. Ltd. v. Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1250 (D. Nev. 2014).

[27] *Foman*, 371 U.S. at 182; *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1152 (9th Cir. 2011).

[28] *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

[29] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[30] *Id.* (emphasis in original).

[31] *LT Intern., Ltd.*, 8 F. Supp. 3d at 1250 (internal citations omitted).

[32] *Lampley v. Smith's Food & Drug Centers, Inc.*, No. 15-cv-1289-RFB-NJK, 2016 WL 5219640, at *2 (D. Nev. July 19, 2016) (citations omitted) (report and recommendation).

**1. Equifax will not suffer undue prejudice from this amendment, as the amendments are minor and discovery has just begun.**

Equifax will suffer no prejudice as a result of amendment. More than a month remains until the leave-to-amend deadline runs on May 9 2017, and the parties have not exchanged written discovery, for which more than four months remain until closure on August 7, 2017. Thus, there is not even an argument that Equifax will have spent the majority of this case responding to discovery directed to a different set of allegations. Moreover, Plaintiffs' proposed amendments consist largely of refashioning Plaintiffs' damage inquiries – particularly clarifying the informational injury allegations in light of *Syed*. Plaintiffs also seek to clarify their proposed class claims, which will result in *less* prejudice to Equifax by giving Equifax a clearer impression of the scope of their class claim, which will likely assist the parties in framing their arguments for and against class certification, and in conducting post-certification discovery, as applicable.

Indeed, the scheduling order in this case contains a section which *presupposes* that the parties may seek leave to extend the scheduling order deadlines in the event class certification is sought and granted. Since the parties have already accounted for the possibility that discovery may be extended upon class certification, the possibility of unfair surprise to Equifax is minimized. Thus, the "touchstone" favor in the Court's leave-to-amend analysis weighs in favor of granting amendment.

**2. Plaintiffs' did not unduly delay this motion, which is brought more than a month prior to the leave-to-amend deadline.**

The Court's scheduling order sets the leave-to-amend deadline for May 9, 2017, and Plaintiffs' proposed amendment falls well within this deadline. While the undue-delay analysis does not end with the binary determination that scheduling order deadlines are satisfied, if ample time remains to conduct discovery, "a strong presumption against finding undue delay applies."[33] The Court also considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading,"[34] and takes into account whether the

---

[33] *Wilson v. Greater Las Vegas Ass'n of Realtors*, No. 2:14-cv-362-APG-NJK, 2015 WL 5310716, at *3 (D. Nev. Sept. 10, 2015).

[34] *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (quotation omitted).

delay between acquisition of new information and the filing of a proposed amended complaint was "unreasonable." Intervals of approximately one month between the acquisition of new information and the filing of a proposed amended complaint have been found reasonable.[35]

In this case, the *Syed* decision was handed down on January 20, 2017, well after the Complaint and First Amended Complaint were filed. Moreover, publication of an amended order in *Syed* only occurred on March 20, 2017 – a little over two weeks ago. While Plaintiffs do not believe that *Syed* introduced any radical new concepts of liability, its discussion of the viability of a "concrete informational injury" is instructive as to how damage allegations could be pled in other FCRA claims, such as this one. Informed by the *Syed* decision, which was unavailable to Plaintiffs at the time they filed their First Amended Complaint, Plaintiffs now seek to amend their damage-based allegations.

As to Plaintiffs' proposed modified class definition, Plaintiffs also did not unduly delay bringing this amendment. As more than three months remain to conduct discovery, moreover, the "strong presumption" against finding undue delay applies to Plaintiffs' proposed amendments. And in as noted above, the parties have not yet exchanged discovery requests. Moreover, A motion for class certification has not yet been filed; but when it is, the parties should be in the best possible position to argue the merits of whether Plaintiffs' claims should be properly brought on a class-wide basis. Plaintiffs' proposed amended complaint helps achieve that goal. In sum, this factor weighs in favor of granting amendment.

### 3. Plaintiffs have not brought this proposed amendment in bad faith.

There is no evidence that Plaintiffs have brought this proposed amendment in bad faith. Their proposed amendments consist of clarifications to their existing claims, which stem from Plaintiffs' original claims. Plaintiffs believe that these amendments will in fact better assist Equifax in preparing its defense in this case, and were brought as soon as was practicable after the *Syed* decision and subsequent rehearing. This factor weighs in favor of granting amendment.

---

[35] *Wilson*, 2015 WL 5310716, at *2.

**4. Because Plaintiffs' prior amendment was an amendment as of right, there has effectively been no failure of previous amendments to cure pleading deficiencies.**

When considering whether a party has previously amended their complaint, other trial courts have drawn a distinction between circumstances where an "amended complaint was the result of amendment as of right, not upon successful motion and not after dismissal of claims with instructions on how to cure their deficiencies."[36] Where prior amendment was made as a matter of right, it "does not weight against amendment."[37]

Here, Plaintiffs' first amendment to their complaint came shortly after they filed their original action, and came as a matter of right. There has been no motion practice on the viability of any of Plaintiffs' allegations previously, and no instructions from the Court on how Plaintiffs' allegations should be refashioned to satisfy federal pleading standards. Indeed, as indicated above, Plaintiffs' impetus for bringing this proposed amended complaint stems in part from the *Syed* decision, which was unavailable to Plaintiffs at the time they brought their first amended complaint. This factor should not weigh in the Court's analysis.

**5. Plaintiff's proposed amended complaint, which seeks only to clarify the class definition and make minor modifications to its damage allegations and class discussion, is not futile.**

District courts in this jurisdiction have noted that denial of a motion for leave to amend on futility grounds is "rare," and have concluded that "deferring ruling on the sufficiency of the allegations is preferred in light of the more liberal standards applicable to motions to amend and the fact that the parties' arguments are better developed through a motion to dismiss."[38]

Here, Plaintiffs' proposed amendments consist largely of restructurings of some of their damage allegations in light of new Ninth Circuit authority, clarification of their class claims, and illustrative discussion of the same in their class-based explanations. These changes are arguably not even the sorts of substantive modifications which make a futility analysis relevant here. To the degree the Court finds it necessary to weigh futility, this factor also favors amendment.

---

[36] *Lt Intern. Ltd.*, 8 F. Supp. 3d at 1252 (citation omitted).
[37] *Id.*
[38] *Wilson*, 2015 WL 5310716, at *2 (citations omitted).

**CONCLUSION**

For all of the above reasons, the *Foman* factors and the Ninth Circuit's liberal policy favoring amended complaints weigh heavily in favor of granting Plaintiffs' motion for leave. Plaintiffs should be permitted leave to file their Second Amended Complaint.

Dated: April 6, 2017

Respectfully submitted,

/s/ Miles Clark, Esq.
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Ste. 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorneys for Plaintiff

IT IS SO ORDERED:

RICHARD F. BOULWARE, II
United States District Judge
DATED this 17th day of May, 2017.

- 13 -

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2017, and pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** was served via the U.S. District Court's electronic filing system to all individuals entitled to receive service of the same.

/s/ Miles N. Clark
Knepper & Clark LLC

# EXHIBIT A

PROPOSED SECOND AMENDED COMPLAINT FOR DAMAGES PURSUANT TO THE
FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ. AND FOR RELIEF UNDER
THE DECLARATORY JUDGMENT ACT, 15 U.S.C. § 2201

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| SHARON BARNUM; JERRY P. CABEBE, ROBERT SUSTRIK, and all similarly situated individuals, <br><br> Plaintiffs, <br> v. <br><br> EQUIFAX INFORMATION SERVICES, LLC, <br><br> Defendant. | : Civil Action No.: 2:16-cv-2866-RFB-NJK <br> : <br> : <br> : <br> : **[PROPOSED] SECOND AMENDED** <br> : **COMPLAINT FOR DAMAGES** <br> : **PURSUANT TO THE FAIR CREDIT** <br> : **REPORTING ACT, 15 U.S.C. § 1681, ET** <br> : **SEQ. AND FOR RELIEF UNDER THE** <br> : **DECLARATORY JUDGMENT ACT, 15** <br> : **U.S.C. § 2201** <br> : <br> : **JURY TRIAL DEMANDED** <br> : |

## <u>INTRODUCTION</u>

1.     The United States Congress has found the banking system is dependent upon fair and

accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the

1

banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

2. A central duty the FCRA imposes upon consumer reporting agencies is the prompt and thorough reinvestigation of disputes which consumers bring to the agency's attention regarding information on the consumer's credit report which is claimed to be inaccurate. The FCRA imposes explicit deadlines for when a consumer reporting agency must complete its reinvestigation of a consumer dispute and notify a consumer of the results of the same. Without prompt, thorough reinvestigation, and timely notice to consumers of the results, consumers have no assurances that their credit is being reported accurately, and suffer from anxiety, stress, and frustration from a perceived continuing damage to their creditworthiness.

3. Plaintiffs Sharon Barnum ("Ms. Barnum") Jerry Cabebe ("Mr. Cabebe"), and Robert Sustrik ("Mr. Sustrik") (collectively, the "Plaintiffs"), on behalf of themselves and a class of similarly situated individuals (the "Class"), bring this action to challenge the actions of EQUIFAX INFORMATION SERVICES, LLC ("Equifax" or "Defendant") in connection with Equifax's failure to timely notify them and a class of similarly situated disputing consumers of the results of its reinvestigations and/or other dispute

2

determinations following completion and/or termination of a reinvestigation of a consumer dispute, as required by 15 U.S.C. § 1681i.

4.      Defendant's failure to timely notify Plaintiffs and Class members of the result of their credit disputes has resulted in, *inter alia*, damage to Plaintiffs and Class members' perceived creditworthiness.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 946 (D. Nev. 2011).

6.      This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

7.      Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiffs are residents of Clark County, the State of Nevada and because Defendant is subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Equifax has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## PARTIES

8.      Plaintiffs are all natural persons residing in the County of Clark, State of Nevada. In addition, Plaintiffs and all putative Class members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

9.      Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce

to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

10. Unless otherwise indicated, the use of Equifax's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Equifax.

**EQUIFAX FAILED TO TIMELY NOTIFY PLAINTIFF SHARON BARNUM AFTER RECIPT OF PLAINTIFF'S DISPUTE LETTER OF EQUIFAX'S REINVESTIGATION RESULTS**

11. In an Equifax credit report dated July 10, 2016 (the "Barnum Equifax Credit Report"), Ms. Barnum believed that Comenity Bank/Brylnhme ("Comenity Brylnhme"), Comenity Bank/Lnbrynat ("Comenity Lnbryant"), JPMorgan Chase Bank ("JP Morgan"), Ocwen Loan Servicing, LLC ("Ocwen"), and Wilshire Credit Corporation ("Wilshire") (collectively, the "Barnum Furnishers") allegedly reported inaccurate, derogatory information.

12. On or about August 2, 2016, Ms. Barnum disputed the allegedly derogatory information on the Barnum Equifax Credit Report by notifying Equifax, in writing, of incorrect and inaccurate credit information contained on her Equifax Credit Report, and requested that this information be corrected (the "Barnum Equifax Dispute Letter.").

13. Ms. Barnum mailed the Barnum Equifax Dispute Letter to Equifax certified, return receipt.

14. After receipt of the Barnum Equifax Dispute Letter, Equifax was required to conduct a reasonable reinvestigation of the dispute to determine whether the disputed information was inaccurate. 15 U.S.C. § 1681i.

15.     Specifically, Equifax was required where applicable to provide the disputed information to the Barnum Furnishers of that information no later than five days after receipt of the Barnum Equifax Dispute Letter.  15 U.S.C. § 1681i(a)(2)(A).

16.     Equifax was required to conduct this reinvestigation before the end of the 30-day period after receiving the Barnum Equifax Dispute Letter.  15 U.S.C. § 1681i(a)(1)(A).  This period could be extended for not more than 15 days if Equifax received additional relevant information from Ms. Barnum during the 30-day reinvestigation period.  15 U.S.C. § 1681i(a)(1)(B).  However, Ms. Barnum provided no additional relevant information to Equifax during the 30-day reinvestigation period, and so Equifax's deadlines to reinvestigate and notify Ms. Barnum were not extended.

17.     Equifax was further required to notify Ms. Barnum of the results of its reinvestigation in writing before the expiration of the 5-day period following completion of its reinvestigation.  15 U.S.C. § 1681i(a)(6)(A).

18.     In the event Equifax determined during the course of its reinvestigation that Plaintiff's dispute was frivolous or irrelevant, Equifax was also required to notify Ms. Barnum in writing of that determination no later than 5 days after making that determination.  15 U.S.C. § 1681i(a)(3)(B).

19.     However, Equifax never timely responded to the Barnum Equifax Dispute Letter at all by notifying Mr. Barnum, in writing or otherwise, within the time limits specified above, either that it had completed its reinvestigation of her dispute, or determined that the dispute was frivolous and/or irrelevant and terminated its reinvestigation.

20.     Because Equifax failed to timely respond to the Barnum Equifax Dispute Letter, Ms. Barnum had no way of knowing whether Equifax timely notified any of the Barnum

Furnishers of disputed information as 15 U.S.C. § 1681i required, nor whether any of the Barnum Furnishers conducted a timely and proper investigation of the disputed information as required by 15 U.S.C. § 1681s-2(b).

21. Because Equifax failed to timely respond to the Barnum Equifax Dispute Letter, Ms. Barnum also could not determine whether, pursuant to its duty under 15 U.S.C. § 1681i(a)(5)(A)(i) and (ii), Equifax timely found the information she disputed was inaccurate.

22. Even if Equifax did in fact conduct a timely reasonable reinvestigation of Ms. Barnum's disputed information, or concluded that her dispute was frivolous, it failed to timely notify Ms. Barnum of the same in writing or otherwise, in violation of 15 U.S.C. § 1681i(a)(6)(A) and/or 15 U.S.C. § 1681i(a)(3)(B).

23. Equifax's failure to timely notify Ms. Barnum of the results of a reinvestigation, or notify Ms. Barnum that the dispute was frivolous, violated 15 U.S.C. § 1681i.

24. Equifax's failure to timely notify Ms. Barnum was at least negligent. 15 U.S.C. § 1681o.

25. On information and belief, in failing to timely notify Ms. Barnum, Equifax not only recklessly disregarded its reinvestigation obligations, but also lowered its own costs of conducting reinvestigations. Equifax's derogation of its statutory duty was thus willful. 15 U.S.C. § 1681n.

26. On information and belief, in failing to timely notify Ms. Barnum of the results of its reinvestigation, Equifax also sought to induce Ms. Barnum to seek to purchase a copy of her Equifax credit report to confirm its accuracy, resulting in direct pecuniary benefits to Equifax. Thus, Equifax's failure to timely notify Ms. Barnum was also willful. 15 U.S.C. § 1681n.

27.     In failing to and sought to induce Ms. Barnum to seek to purchase a copy of her Equifax credit report to confirm its accuracy, resulting in direct pecuniary benefits to Equifax. Thus, on information and belief, Equifax's failure to timely notify Ms. Barnum was also willful. 15 U.S.C. § 1681n.

28.     Equifax's failure to timely conduct a reasonable reinvestigation and/or frivolousness determination, and notify Ms. Barnum of the same, has caused Ms. Barnum to suffer actual damages. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n. Specifically, Ms. Barnum considered incurring additional expense in submitting additional correspondence with Equifax to obtain an investigation of the disputed furnisher trade lines. Such costs are concrete and real, as Ms. Barnum's time has a real and true intrinsic value in addition to the real value and costs incurred in sending additional correspondence, such as ink, paper, stamps, envelopes and use of a certified mailing service to ensure receipt in addition to the expense already incurred for her original dispute which was disregarded by Equifax.

29.     Equifax's failure to timely notify Ms. Barnum also caused Ms. Barnum increased uncertainty, anxiety, and other emotional distress, because Ms. Barnum had no assurances from Equifax that any properly disputed information was timely corrected. *Id.* Ms. Barnum began suffering these damages on an ongoing basis, from the date Equifax's time to respond to the Barnum Equifax Dispute Letter expired under the FCRA.

30.     Equifax's failure to timely notify Ms. Barnum has also caused her to suffer a concrete informational injury, as Ms. Barnum had a statutorily guaranteed right to receive a timely response to her consumer dispute, which Equifax failed to provide.

31.	Ms. Barnum has been obligated to retain an attorney to prosecute this dispute, and has incurred attorney's fees and costs as a result, recoverable under. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

32.	As a result of Equifax's violations of the FCRA, Ms. Barnum is entitled to recover actual damages, statutory damages, punitive damages, and attorney's fees and costs. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

## EQUIFAX FAILED TO TIMELY NOTIFY PLAINTIFF JERRY P. CABEBE AFTER RECIPT OF PLAINTIFF'S DISPUTE LETTER OF EQUIFAX'S REINVESTIGATION RESULTS

33.	Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

34.	In an Equifax credit report dated May 5, 2016 (the "Cabebe Equifax Credit Report"), Mr. Cabebe believed that Chase Card ("Chase"), Credit One Bank ("Credit One"), Ditech Financial LLC ("Ditech"), New Century Mortgage ("New Century"), and Specialized Loan Services ("SLS") (collectively, the "Cabebe Furnishers") allegedly reported inaccurate, derogatory information.

35.	On or about July 14, 2016, Mr. Cabebe disputed the allegedly derogatory information on the Cabebe Equifax Credit Report by notifying Equifax, in writing, of incorrect and inaccurate credit information contained on his Equifax Credit Report, and requested that this information be corrected (the "Cabebe Equifax Dispute Letter.").

36.	Mr. Cabebe mailed the Cabebe Equifax Dispute Letter to Equifax certified, return receipt.

37.	After receipt of the Cabebe Equifax Dispute Letter, Equifax was required to conduct a reasonable reinvestigation of the dispute to determine whether the disputed information was inaccurate. 15 U.S.C. § 1681i.

38. Specifically, Equifax was required where applicable to provide the disputed information to the Cabebe Furnishers of that information no later than five days after receipt of the Cabebe Equifax Dispute Letter. 15 U.S.C. § 1681i(a)(2)(A).

39. Equifax was required to conduct this reinvestigation before the end of the 30-day period after receiving the Cabebe Equifax Dispute Letter. 15 U.S.C. § 1681i(a)(1)(A). This period could be extended for not more than 15 days if Equifax received additional relevant information from Mr. Cabebe during the 30-day reinvestigation period. 15 U.S.C. § 1681i(a)(1)(B). However, Mr. Cabebe provided no additional relevant information to Equifax during the 30-day reinvestigation period, and so Equifax's deadlines to reinvestigate and notify Mr. Cabebe were not extended.

40. Equifax was further required to notify Mr. Cabebe of the results of its reinvestigation in writing before the expiration of the 5-day period following completion of its reinvestigation. 15 U.S.C. § 1681i(a)(6)(A).

41. In the event Equifax determined during the course of its reinvestigation that Plaintiff's dispute was frivolous or irrelevant, Equifax was also required to notify Mr. Cabebe in writing of that determination no later than 5 days after making that determination. 15 U.S.C. § 1681i(a)(3)(B).

42. However, Equifax never timely responded to the Cabebe Equifax Dispute Letter at all by notifying Plaintiff, in writing or otherwise, within the time limits specified above, either that it had completed its reinvestigation of Plaintiff's dispute, or determined that the dispute was frivolous and/or irrelevant and terminated its reinvestigation.

43. Because Equifax failed to timely respond to the Cabebe Equifax Dispute Letter, Mr. Cabebe had no way of knowing whether Equifax timely notified any of the Cabebe

Furnishers of disputed information as 15 U.S.C. § 1681i required, nor whether any of the Cabebe Furnishers conducted a timely and proper investigation of the disputed information as required by 15 U.S.C. § 1681s-2(b).

44. Because Equifax failed to timely respond to the Cabebe Equifax Dispute Letter, Mr. Cabebe also could not determine whether, pursuant to its duty under 15 U.S.C. § 1681i(a)(5)(A)(i) and (ii), Equifax timely found the information he disputed was inaccurate.

45. Even if Equifax did in fact conduct a timely reasonable reinvestigation of Mr. Cabebe's disputed information, or concluded that his dispute was frivolous, it failed to timely notify Mr. Cabebe of the same in writing or otherwise, in violation of 15 U.S.C. § 1681i(a)(6)(A) and/or 15 U.S.C. § 1681i(a)(3)(B).

46. Equifax's failure to timely notify Mr. Cabebe of the results of a reinvestigation, or notify Mr. Cabebe that the dispute was frivolous, violated 15 U.S.C. § 1681i.

47. Equifax's failure to timely notify Mr. Cabebe was at least negligent. 15 U.S.C. § 1681o.

48. On information and belief, in failing to timely notify Mr. Cabebe, Equifax not only recklessly disregarded its reinvestigation obligations, but also lowered its own costs of conducting reinvestigations. Equifax's derogation of its statutory duty was thus willful. 15 U.S.C. § 1681n.

49. On information and belief, in failing to timely notify Mr. Cabebe of the results of its reinvestigation, Equifax also sought to induce Mr. Cabebe to seek to purchase a copy of his Equifax credit report to confirm its accuracy, resulting in direct pecuniary benefits to Equifax. Thus, Equifax's failure to timely notify Mr. Cabebe was also willful. 15 U.S.C. § 1681n.

50.     Equifax's failure to timely conduct a reasonable reinvestigation and/or frivolousness determination, and notify Mr. Cabebe of the same, has caused Mr. Cabebe to suffer actual damages, including out-of-pocket expenses. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n. Specifically, Mr. Cabebe incurred additional expense in submitting additional correspondence with Equifax to obtain an investigation of the disputed furnisher trade lines. Such costs are concrete and real, as Mr. Cabebe's time has a real and true intrinsic value in addition to the real value and costs incurred in sending additional correspondence, such as ink, paper, stamps, envelopes and use of a certified mailing service to ensure receipt, in addition to the costs of the initial dispute which was disregarded by Equifax.

51.     Equifax's failure to timely notify Mr. Cabebe also caused Mr. Cabebe increased uncertainty, anxiety, and other emotional distress, because Mr. Cabebe had no assurances from Equifax that any properly disputed information was timely corrected. *Id.* Mr. Cabebe began suffering these damages on an ongoing basis, from the date Equifax's time to respond to the Cabebe Equifax Dispute Letter expired under the statute.

52.     Equifax's failure to timely notify Mr. Cabebe has also caused him to suffer a concrete informational injury, as Mr. Cabebe had a statutorily guaranteed right to receive a timely response to his consumer dispute, which Equifax failed to provide.

53.     Mr. Cabebe has been obligated to retain an attorney to prosecute this dispute, and has incurred attorney's fees and costs as a result. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

54.     As a result of Equifax's violations of the FCRA, Mr. Cabebe is entitled to recover actual damages, statutory damages, punitive damages, and attorney's fees and costs, which are recoverable under. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

**EQUIFAX FAILED TO TIMELY NOTIFY PLAINTIFF ROBERT SUSTRIK AFTER RECIPT OF MR. SUSTRIK'S DISPUTE LETTER OF EQUIFAX'S REINVESTIGATION RESULTS**

55.    In an Equifax credit report dated July 2, 2016 (the "Equifax Credit Report"), Mr. Sustrik believed that One Nevada Credit Union ("One Nevada"), Wells Fargo Home Mortgage ("Wells Fargo"), Nissan Motor Acceptance ("Nissan"), and Toyota Financial Services ("Toyota") (collectively, the "Sustrik Furnishers") reported inaccurate, derogatory information.

56.    On or about August 18, 2016, Mr. Sustrik disputed the allegedly derogatory information by notifying Equifax, in writing, of incorrect and inaccurate credit, and requested that this information be corrected (the "Sustrik Equifax Dispute Letter."). Mr. Sustrik mailed the Sustrik Equifax Dispute Letter to Equifax certified, return receipt.

57.    After receipt of the Sustrik Equifax Dispute Letter, Equifax was required to conduct a reasonable reinvestigation of the dispute to determine whether the disputed information was inaccurate.  15 U.S.C. § 1681i.

58.    Specifically, Equifax was required where applicable to provide the disputed information to the Sustrik Furnishers of that information no later than five days after receipt of the Sustrik Equifax Dispute Letter.  15 U.S.C. § 1681i(a)(2)(A).

59.    Equifax was required to conduct this reinvestigation before the end of the 30-day period after receiving the Sustrik Equifax Dispute Letter.  15 U.S.C. § 1681i(a)(1)(A).  This period could be extended for not more than 15 days if Equifax received additional relevant information from Mr. Sustrik during the 30-day reinvestigation period.  15 U.S.C. § 1681i(a)(1)(B).  However, Mr. Sustrik provided no additional relevant

information to Equifax during the 30-day reinvestigation period, and so Equifax's deadlines to reinvestigate and notify Mr. Sustrik were not extended.

60. Equifax was further required to notify Mr. Sustrik of the results of its reinvestigation in writing before the expiration of the 5-day period following completion of its reinvestigation. 15 U.S.C. § 1681i(a)(6)(A).

61. In the event Equifax determined during the course of its reinvestigation that Mr. Sustrik's dispute was frivolous or irrelevant, Equifax was also required to notify Mr. Sustrik in writing of that determination no later than 5 days after making that determination. 15 U.S.C. § 1681i(a)(3)(B).

62. However, Equifax never timely responded to the Sustrik Equifax Dispute Letter at all by notifying Mr. Sustrik, in writing or otherwise, within the time limits specified above, either that it had completed its reinvestigation of Mr. Sustrik's dispute, or determined that the dispute was frivolous and/or irrelevant and terminated its reinvestigation.

63. Because Equifax failed to timely responded to the Sustrik Equifax Dispute Letter, Mr. Sustrik had no way of knowing whether Equifax timely notified any of the Sustrik Furnishers of disputed information as 15 U.S.C. § 1681i required, nor whether any of the Sustrik Furnishers conducted a timely and proper investigation of the disputed information as required by 15 U.S.C. § 1681s-2(b).

64. Because Equifax failed to timely respond to the Sustrik Equifax Dispute Letter, Mr. Sustrik also could not determine whether, pursuant to its duty under 15 U.S.C. § 1681i(a)(5)(A)(i) and (ii), Equifax timely found the information he disputed was inaccurate.

65.    Even if Equifax did in fact conduct a timely reasonable reinvestigation of Mr. Sustrik's disputed information, or concluded that Mr. Sustrik's dispute was frivolous, it failed to timely notify Mr. Sustrik of the same in writing or otherwise, in violation of 15 U.S.C. § 1681i(a)(6)(A) and/or 15 U.S.C. § 1681i(a)(3)(B).

66.    Equifax's failure to timely notify Mr. Sustrik of the results of a reinvestigation, or notify Mr. Sustrik that the dispute was frivolous, violated 15 U.S.C. § 1681i.

67.    Equifax's failure to timely notify Mr. Sustrik was at least negligent. 15 U.S.C. § 1681o.

68.    On information and belief, in failing to timely notify Mr. Sustrik, Equifax not only recklessly disregarded its reinvestigation obligations, but also lowered its own costs of conducting reinvestigations.  Equifax's derogation of its statutory duty was thus willful. 15 U.S.C. § 1681n.

69.    On information and belief, in failing to timely notify Mr. Sustrik of the results of its reinvestigation, Equifax also sought to induce Mr. Sustrik to seek to purchase a copy of his Equifax credit report to confirm its accuracy, resulting in direct pecuniary benefits to Equifax. Thus, Equifax's failure to timely notify Mr. Sustrik was also willful.  15 U.S.C. § 1681n.

70.    Equifax's failure to timely conduct a reasonable reinvestigation and/or frivolousness determination, and notify Mr. Sustrik of the same, has caused Mr. Sustrik to suffer actual damages, including out-of-pocket expenses.  15 U.S.C. § 1681o, 15 U.S.C. § 1681n. Specifically, Mr. Sustrik incurred additional expense of purchasing an additional copy of his credit report after Equifax's time to respond had expired, in order to verify the accuracy of the items reported on his credit report.  Such costs are concrete and real, as Mr. Sustrik's time has a real and true intrinsic value in addition to the real value and costs

incurred in sending additional correspondence, such as ink, paper, stamps, envelopes and use of a certified mailing service to ensure receipt.

71. Equifax's failure to timely notify Mr. Sustrik also caused Mr. Sustrik increased uncertainty, anxiety, and other emotional distress, because Mr. Sustrik has no assurances from Equifax that any properly disputed information was timely corrected. *Id.* Mr. Sustrik began suffering these damages on an ongoing basis, from the date Equifax's time to respond to the Sustrik Equifax Dispute Letter expired under the statute.

72. Equifax's failure to timely notify Mr. Sustrik has also caused him to suffer a concrete informational injury, as Mr. Sustrik had a statutorily guaranteed right to receive a timely response to his consumer dispute, which Equifax failed to provide.

73. Mr. Sustrik has been obligated to retain an attorney to prosecute this dispute, and has incurred attorney's fees and costs as a result. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

74. As a result of Equifax's violations of the FCRA, Mr. Sustrik is entitled to recover actual damages, statutory damages, punitive damages, and attorney's fees and costs. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

## CLASS ACTION ALLEGATIONS

75. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

76. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated (the "Class").

77. Plaintiffs represent, and are members of the Class, consisting of:

All persons with addresses within the United States who within the past two (2) years notified Equifax of a consumer dispute for which Equifax failed to notify the consumer of the results of Equifax's reinvestigation or Equifax's determination of frivolousness:

(i)      within the expiration of the 30-day reinvestigation period beginning on the date Equifax received the notice of the dispute from the consumer; and, if applicable,

(ii)     within 15-days in addition to the initial 30-day period set forth in (i) above where the consumer provided Equifax with additional relevant information within the 30-day reinvestigation period.

This two-year period runs from the date the Complaint was filed in the instant matter.

78.    Equifax and its employees or agents are excluded from the Class.

79.    Plaintiffs do not know the number of members in the Class, but believe the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

80.    Plaintiffs and members of the Class were harmed by the acts of Equifax in at least the following ways: Equifax, either directly or through its agents, violated 15 U.S.C. § 1681i(a)(6)(A) when it failed to timely notify Plaintiffs and the Class members of its reinvestigation and/or termination of reinvestigation of their credit disputes after they notified Equifax of the same. Plaintiffs and the Class members were damaged thereby because Equifax's failure to timely notify them left them in a state of uncertainty regarding the accuracy of their credit reports.

81.    This class allegation seeks recovery of actual, statutory, and punitive damages on behalf of the Class, declarations that Defendant's conduct common to all class members violated the FCRA, any relief the Court deems appropriate under Federal Rule of Civil Procedure 23(b)(2), as well as reasonable attorney's fees and costs. It expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

82. The joinder of Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The members of the Class can be identified through Defendant's records or Defendant's agents' records.

83. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

   a. Whether, within the two years prior to the filing of this Complaint, Equifax or its agents violated 15 U.S.C. § 1681i(a)(6)(A) or 15 U.S.C. § 1681i(a)(3)(B) when it failed to timely notify Plaintiffs and the Class members of its reinvestigation of their credit disputes, or determined the disputes were frivolous and terminated its reinvestigations, after the class members disputed information on their credit reports with Equifax; and

   b. Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violations.

84. Plaintiffs are typical Class members in that Plaintiffs suffered harm resulting from Equifax's failure to timely notify them of its reinvestigation determinations.

85. Plaintiffs will fairly and adequately represent and protect the interest of the Class in that Plaintiffs have no interests antagonistic to any member of the Class.

86. Plaintiffs and the members of the Class have all suffered irreparable harm as a result of Equifax's unlawful and wrongful conduct; namely they each lost the timely provision of a response from Equifax addressing credit reporting errors within the statutorily defined

reinvestigation period lasting thirty (30) to forty-five (45) days. As a result, all the class members have suffered a concrete informational injury in that they have lost a benefit conferred on them by Congress, specifically the right to know that Equifax had timely reinvestigated their consumer disputes and responded to the same. This benefit, now lost, can never be recovered. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Equifax will likely continue such illegal conduct, and may continue to attempt to enrich itself by lowering its reinvestigation costs and inducing consumers to purchase their credit reports from Equifax to verify the accuracy of information contained thereon.

87. Thus, Plaintiffs and Class members request, in addition to their claims for FCRA relief, a declaration from the Court that in failing to timely notify Plaintiffs and Class members, Equifax violated 15 U.S.C. § 1681i(a)(6)(A) in the case of reinvestigations, or 15 U.S.C. § 1681i(a)(3)(B) in the case of reinvestigations terminated after Equifax determined any credit dispute was frivolous or irrelevant. Such declarations will prevent Equifax from engaging in similar conduct for other consumers in the future. Because of the size of the individual Class member's claims, few, if any, of the Class members could afford to seek legal redress for the wrongs complained of herein.

88. Class certification is also appropriate because Equifax has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the class members available under Federal Rule of Civil Procedure 23(b)(2).

89. Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the FCRA.

90.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Equifax is small because the maximum statutory damages in an individual action for FCRA violations are minimal.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

91.     Equifax has acted on grounds generally applicable to the Class.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 *ET SEQ*. (FCRA)**

92.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

93.     The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681 *et seq.*

94.     As a result of each and every willful violation of the FCRA, Plaintiffs and Class members are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Equifax.

95.     As a result of each and every negligent noncompliance of the FCRA, Plaintiffs and Class members are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Equifax.

96. Plaintiffs and class members are also entitled to appropriate equitable injunctive relief, including orders preliminarily and permanently enjoining Equifax from further engagement in the FCRA violations listed above. Federal Rule of Civil Procedure 23(b)(2).

## SECOND CAUSE OF ACTION
## REQUEST FOR DECLARATORY RELIEF
## 28 U.S.C. § 2201

97. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

98. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681 *et seq.*

99. Plaintiffs and Class members are entitled to a declaration from the Court that Equifax's failure to notify any consumer in writing within 5 days of completing its reinvestigation of a consumer dispute violated 15 U.S.C. § 1681i(a)(6)(A).

100. Plaintiffs and Class members are entitled to a declaration from the Court that Equifax's failure to notify any consumer in writing within 5 days of terminating its reinvestigation upon determining that a consumer dispute with either frivolous or irrelevant violated 15 U.S.C. § 1681i(a)(6)(A).

101. Plaintiffs and class members are also entitled to appropriate equitable injunctive relief, including orders preliminarily and permanently enjoining Equifax from further engagement in the FCRA violations listed above. Federal Rule of Civil Procedure 23(b)(2).

102. Plaintiffs and Class members have incurred attorney's fees to prosecute this cause of action, and are entitled to reasonable attorney's fees and costs from Equifax.

## PRAYER FOR RELIEF

Plaintiffs and Class members respectfully requests the Court grant them the following relief against Defendant:

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and under 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;

- orders preliminarily and permanently enjoining Equifax from engaging in the violations of the FCRA outlined above; and

- any other relief the Court may deem just and proper.

## SECOND CAUSE OF ACTION
## REQUEST FOR DECLARATORY RELIEF
## 28 U.S.C. § 2201

- A declaration from the Court that Equifax's failure to notify any consumer in writing within 5 days of completing its reinvestigation of a consumer dispute violated 15 U.S.C. § 1681i(a)(6)(A);

- A declaration from the Court that Equifax's failure to notify any consumer in writing within 5 days of terminating its reinvestigation upon determining that a consumer dispute with either frivolous or irrelevant violated 15 U.S.C. § 1681i(a)(6)(A);

- orders preliminarily and permanently enjoining Equifax from engaging in the violations of the FCRA outlined above; and

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

## <u>TRIAL BY JURY</u>

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs and Class members are entitled to, and demand, a trial by jury.

Dated: April 6, 2017

Respectfully submitted,

/s/ Miles N. Clark
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
matthew.knepper@knepperclark.com
miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Tel: (702) 880-5554
Fax: (702) 385-5518
dkrieger@hainesandkrieger.com

Attorneys for Plaintiffs